**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**G'ESA KALAFI,**
**f/k/a STANLEY L. FELTON,**

**Plaintiff,**

**v.** **Case No. 23-CV-1591**

**THOMAS POLLARD, *et al.*,**

**Defendants.**

---

**ORDER**

---

Plaintiff G'esa Kalafi (f/k/a Stanley L. Felton) who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Kalafi was allowed to proceed on a retaliation claim pursuant to the First Amendment against defendant Thomas Pollard. He was also allowed to proceed on a due process claim pursuant to the Fourteenth Amendment against defendants Michael Cole and Ross Hoffman. The defendants filed a motion for summary judgment. (ECF No. 71.) For the reasons stated below, the court grants the defendants' motion for summary judgment.

**ISSUE PRECLUSION**

The defendants argue that the First Amendment retaliation claim against Pollard and the due process claim against Cole are barred by the doctrine of issue preclusion because Kalafi fully litigated these issues before the Wisconsin state courts on a writ of certiorari. (ECF No. 72 at 10.) I agree.

"Federal courts are required to give prior state court judgments the same preclusive effect as they would have in that state." *Koutnik v. Berge*, Case No. 03-C-345-C, 2003 WL 23274516 at *4 (W.D. Wis. Aug. 25, 2003) (citing 28 U.S.C. § 1738). "Issue preclusion under Wisconsin law is 'designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties.'" *Ghelf v. Town of Wheatland*, 132 F. 4th 456, 471 (7th Cir. 2025) (quoting *Michelle T. Sumpter v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327, 329 (1993)). "Wisconsin courts apply the following general rule: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim." *Id.* (citations omitted).

Courts consider two factors to determine whether issue preclusion applies: 1) "[W]hether issue preclusion can, as a matter of law, be applied;" and 2) whether the "application of issue preclusion would be fundamentally fair." *Id.* (quoting *Dostal v. Strand*, 405 W.2d 572, 984 N.W.2d 382, 388 (2023)). For the first factor, courts must consider "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.*

Here, Kalafi's constitutional issues were directly addressed through his petition for certiorari. An inmate aggrieved by a prison's actions may challenge that action through a writ of certiorari, a common law procedure providing judicial review in state court. Kalafi raised both the question of whether Cole acted with

impermissible bias (due process) and whether Pollard unlawfully retaliated against him (First Amendment) in his petition. The Circuit Court for Dane County determined, in an eleven-page opinioin, that Kalafi's allegations against Cole for impermissible bias were unfounded. (ECF No. 70-1 at 10.) Cole had made a comment that Kalafi would be getting a copy of the hearing record for his appeal; this comment, the judge found, "would not cause a reasonable person to doubt the partiality of the decision maker" because it is likely that "the hearing officer was informing Kalafi that he did not have to write everything down related to the hearing." (*Id.*) The circuit court also determined that Cole's comment that he gave Kalafi the disciplinary separation length "he wanted" would not, "on its own, without any additional facts or surrounding context . . . cause a reasonable person to question to hearing officer's partiality." (*Id.*) In ruling against Kalafi, the circuit court cited two of the United State Supreme Court's cases addressing due process standards. (*Id.* at 9).

The circuit court, citing two federal Seventh Circuit decisions, further determined that Pollard did not violate Kalafi's rights because Kalafi did not engage in protected activity under the First Amendment. The court noted "that Kalafi was not actually punished for authoring a letter to the warden regarding prison conditions . . . [but] was disciplined for conspiring to organize disruption of prison operations in the form of a protest." (ECF No. 70-1 at 10.) The circuit court stated that "[t]o the extent that the act of planning a protest would be protected by the First Amendment, courts have held prisoners only have those First Amendment rights 'that are consistent with prison discipline.'" (*Id.* quoting *Ustrak v. Fairman*, 781 F.2d 573, 580

(7th Cir. 1986)). Accordingly, it is clear that the state circuit court addressed the exact issues Kalafi now raises in this case. It is also clear that the court's determination of these issues was necessary for its judgment.

The second question is whether it would be fair to hold the plaintiff to the earlier court's decision. In considering that question, courts look to the following factors:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained judicial review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Elizabeth A. Fitzgibbon v. Bryan Keberlein et al.*, Case No. 26-CV-23, 2026 W. L 2389689 at * 4 (E.D. Wis. Aug. 17, 2026) (quoting *Virnich v. Vorwald*, 664 F.3d 206, 216-17 (7th Cir. 2011)).

Most of these factors favor application of issue preclusion here. The plaintiff was able to obtain appellate review of the circuit court's decision; there were no shifts in the law in the interim, nor any shifts in the burden of persuasion; and there is no fundamental unfairness to holding a plaintiff to the decision produced by a process

the Seventh Circuit has found adequate.[1] Similarly, although there are some important differences between the nature of certiorari review and a civil lawsuit, they do not militate against applying issue preclusion in this case. Certiorari proceedings are narrower in scope than civil proceedings because they limit plaintiffs to certain challenges, including whether the DOC acted within its jurisdiction, acted according to law, or arbitrarily and unreasonably, etc. ECF No. 70-2 at 4. Even if true in the abstract, however, in this case there do not appear to be any limitations on what the plaintiff was actually able to argue. As noted earlier, both the circuit court and court of appeals cited federal constitutional principles in addressing his claims—the same principles Kalafi asks this court to apply to the same facts.

Moreover, Wisconsin courts do not consider it fatal that the scope of the proceedings or availability of relief might be different between the two hearings. For example, in *Masko v. City of Madison,* after an accident between a car and a city bus, the car driver received a citation, which she challenged in municipal court. 2003 WI App 124, ¶ 3, 265 Wis. 2d 442, 447, 665 N.W.2d 391, 394. As the *defendant* in that action, she had no ability to seek damages. Nor did she have the right to a trial by jury in municipal court. Despite these limitations, the state courts had little trouble

[1] *Hamlin v. Vaudenberg,* 95 F.3d 580, 585 (7th Cir. 1996) ("In this case, the inmate complaint review system and certiorari review allow consideration of alleged due process violations. Both offer relief from liberty deprivations by reinstating prisoner status in the general population (even assuming that disciplinary segregation implicates due process) and expunging the prisoner's disciplinary record. Neither can offer money damages, which would be available in a state law tort action against the prison officials, but these proceedings are neither meaningless nor nonexistent, so they provide all the process that is constitutionally required. We agree with the district court that Wisconsin post-deprivation proceedings are adequate.")

applying issue preclusion when the driver filed a civil lawsuit against the city. The court of appeals noted that, "[i]n the municipal court, the issue was whether Masko had attempted an improper lane change and caused the accident. In this action, determining whether the City is liable for Masko's damages also depends upon whether Masko or the bus driver caused the accident. The issue in both actions is the same." *Id.* at 450, 395. Thus, the unavailability of damages and lack of a jury trial in the earlier proceeding did not foreclose application of issue preclusion in the civil action.

It's true that, in a case where a plaintiff in a certiorari proceeding had no opportunity to conduct discovery or produce evidence, a district court deemed the proceeding "unfair." *Kearney v. Milwaukee Cty*, Case No. 05-C-834, 2006 WL 3147408 at * 6 (E.D. Wis. Oct. 30, 2006) (quoting *Amber J.F. v. Richard B.*, 557 N.W.2d 84, 88 (Wis. Ct. App. 1996)). However, *Kearney* involved a personnel issue that the employee challenged through a civil service personnel review board. It was also clear in *Kearney* that the issues presented in the subsequent federal case had expanded from what the plaintiff had presented to the state review board and certiorari court. *Kearney* thus stands in contrast to this action, where the issues have remained the same throughout. Kalafi also had the opportunity to obtain judicial review with the Wisconsin Court of Appeals. (ECF No. 70-2.)

*Turner v. Boughton* is not to the contrary, either. There, Judge Crabb declined to apply issue preclusion to a certiorari proceeding in which the inmate plaintiff "had failed to show that the conditions in administrative confinement were harsh enough

to create an atypical and significant hardship." No. 17-CV-203-JDP, 2021 WL 1200597, at *8 (W.D. Wis. Mar. 30, 2021). In declining to apply issue preclusion to that certiorari judgment, Judge Crabb noted that the state court's certiorari ruling had "concerned only Turner's May 2014 ACRC hearing, but his claim in this case concerns his protracted and indefinite placement in administrative confinement, which continued long past the events at issue in the certiorari matter." *Id.* That is, because the earlier certiorari proceeding did not encompass the entirety of the plaintiff's new federal claim, it would not be appropriate to apply issue preclusion. In essence, because the "issue" had changed, the court could not say that any judicial determination about the original issue should control the outcome of the new issue: "I cannot say that the liberty-interest question was settled for all time in the certiorari proceeding given that one of the major conditions of confinement facing Turner is the sheer length of time he has been forced to live in administrative confinement." *Id.* Here, by contrast, the issues remain identical, and so issue preclusion is appropriate. Ultimately, Kalafi has not shown any reason that a Wisconsin court would entertain new claims based on the exact same issues that courts already decided in his certiorari action. "Or, in other words, had plaintiffs sued in Wisconsin state court instead of federal district court, would their action have been barred? The short answer is yes." *Balcerzak v. City of Milwaukee, Wis.,* 163 F.3d 993, 996 (7th Cir. 1998). Wisconsin is not teeming with underworked judges; the fact that four state judges have now ruled on Kalafi's claims would seem to suffice.

## CLAIM AGAINST HOFFMAN

The remaining claim is not subject to issue preclusion because it has not yet been litigated. Kalafi received a conduct report for allegedly organizing a protest to disrupt prison operations. After a September 12, 2022, disciplinary hearing, Kalafi was found guilty and given 240 days in disciplinary separation. (ECF No. 73, ¶¶ 36, 62, 70.) Then, on January 24, 2023, Kalafi had a hearing in front of the Administrative Confinement Committee regarding his placement status following the completion of his 240 days in disciplinary separation. (*Id.*, ¶ 78.) Defendant Hoffman was a member of the Committee, along with four to six other prison employees. (*Id.;* ECF No. 76 at ¶ 12.) A placement status hearing "is a non-disciplinary classification review conducted by DOC staff to determine whether an inmate's continued placement in administrative confinement is warranted based on institutional safety and security considerations, rather than to adjudicate guilt or impose punishment." (*Id.*, ¶ 79.) Hoffman states that he was in no way involved in the issuance of the underlying conduct report and the subsequent disciplinary hearing that lead to Kalafi's 240 days in disciplinary separation. (*Id.*, ¶ 80.) (Nor does Kalafi allege that he was.) At the hearing, Kalafi had an advocate, and Kalafi himself was present and gave testimony. (*Id.*, ¶ 81.) The Committee also asked Kalafi questions and allowed Kalafi to respond. (*Id.*) Hoffman was one of many Committee members to vote on Kalafi's status, but after reviewing all the evidence, including the conduct report, Kalafi's disciplinary history, and several other factors, the Committee unanimously voted that Kalafi was a serious risk to prison operations and posed a

risk to the general prison population. (*Id.*, ¶¶ 82-92.) The Committee voted to keep Kalafi on administrative confinement "until he demonstrated some understanding of how his actions affect others and until [he] demonstrates how his actions affect others and until [he] was no longer a potential threat to staff and inmates." (*Id.*, ¶ 94.)

Kalafi, in his response materials, does not address Hoffman's findings of fact, stating that he "attempted to gather direct and circumstantial evidence to support his claim via discovery, however, at every turn the Magistrate Judge hindered Kalafi at every turn and believed every word the Assistant Attorney General Mr. Thillman said about complying with Kalafi's discovery requests." (ECF No. 93 at 24-25.) Kalafi stated that he is preserving this issue for appeal. (*Id.*) In Kalafi's second amended complaint, he alleged that the decision to keep Kalafi on administrative confinement was "predetermined" and that Hoffman was biased against him because they "had issues" when Hoffman worked at Kettle Moraine Correctional Institution (KMCI) and Kalafi was housed there. (ECF No. 14, ¶¶ 28-29.) Hoffman disputes this, stating that while they were both at KMCI, he "did not have any personal conflict with Felton and held no animus toward him." (ECF No. 73, ¶ 96.) Hoffman states that he was not directed "to vote a particular way, and he did not enter the hearing with his mind made up. Hoffman's vote reflected his assessment of the materials available to the Committee and the safety and security concerns reflected in those materials." (*Id.*, ¶ 99.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Kalafi claims that Hoffman violated his due process rights because he harbored impermissible bias against him. "Adjudicators are entitled to a presumption of honesty." *Harris v. Westra*, 826 Fed. App'x 570, 572 (7th Cir. 2020) "[P]roving bias is a high bar." *Id.* (citing *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003)). A plaintiff fails to demonstrate bias where the only evidence he provides is that a committee member was familiar with him and/or past disciplinary proceedings. *Id.*

First, I conclude that Kalafi has failed to show a constitutional infraction even if his allegations about bias were plausible. The administrative confinement committee did not convene in order to issue punishment or consider guilt; instead, the committee was tasked with determining the proper placement of Kalafi. In those circumstances, inmates are not entitled to a full-blown due process hearing. Instead, they must merely have a chance to present their own side of things. As the Seventh Circuit has found, such informal due process "requires only that the inmate be given an 'opportunity to present his views'—not necessarily a full-blown hearing." *Westefer v. Neal,* 682 F.3d 679, 685 (7th Cir. 2012). A single reviewer can provide adequate due process. *Id.*

Here, Kalafi alleges merely that a single member of a five- or six-person committee harbored some kind of bias against him based on interactions during his confinement at another prison. Even if true, Kalafi was able to give his opinions, and was even provided an advocate. None of the other members of the committee is alleged to have been biased, and yet the vote was unanimous, meaning the outcome

would not have changed even if Hoffman had recused himself. In short, allegations regarding the bias of a solitary member of a committee do not suffice to call into question the fundamental fairness of a hearing requiring very informal procedural safeguards.

Second, even if the allegations could give rise to a colorable claim in the abstract, Kalafi has elected not to provide any evidence supporting those allegations. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)). Regardless of the court's decisions on previous discovery motions, summary judgment was Kalafi's opportunity to present either the evidence he had regarding Hoffman's bias or describe the evidence he believes he *would* have had had the court ruled in his favor on his discovery motions. He failed to do so. Summary judgment is therefore granted in Hoffman's favor.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 71) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 11th day of September, 2026.

Stephen C. Dries

STEPHEN DRIES
United States Magistrate Judge